**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RAYMOND MAYRANT,                                  :
                                                  :
                              Petitioner,         :          MEMORANDUM DECISION
                                                  :              AND ORDER
           -against-                              :
                                                  :          20 Civ. 9324 (GBD) (BCM)
JULIE WOLCOTT, Superintendent of Attica           :
Correctional Facility                             :
                                                  :
                              Respondent.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Petitioner Raymond Mayrant, proceeding *pro se*, filed this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, seeking to vacate his conviction of murder in the second

degree in violation of New York Penal Law (NYPL) § 125.25(1) and attempted murder in the

second degree in violation of NYPL §§ 110.00 and 125.25(1).  (*See* Amended Petition ("Am.

Pet."), ECF No. 21, at 1.)  Petitioner received a sentence of 50 years to life imprisonment, the

aggregate of 25 years to life for the murder conviction and 25 years for the attempted murder

conviction.  *Id.*

On November 5, 2020, Petitioner submitted his original petition for a writ of habeas corpus,

raising three claims: (1) the felony complaint was jurisdictionally defective; (2) the trial court

erroneously granted the People's for-cause challenge to a prospective juror who unequivocally

affirmed she could be fair and impartial; and (3) the verdict was against the weight of the credible

evidence.  (Petition for Writ of Habeas Corpus (Pet.), ECF No. 2, at 4.)  On November 3, 2022,

with the permission from Magistrate Judge Barbara Moses, Petitioner amended his petition to add

a fourth claim that his Sixth Amendment right to confront the adverse witnesses was violated when

the trial court allowed the cause of death to be stipulated into evidence without the autopsy report or a medical examiner's testimony.  (Am. Pet., ECF No. 21, at 11.)

Before this Court is Magistrate Judge Barbara C. Moses's January 29, 2025 Report recommending that the Amended Petition be denied.  (Report and Recommendation ("Report"), ECF No. 42.)  Petitioner filed timely objections to the Report.[1]  (Objection ("Obj."), ECF No. 44.) Having reviewed the objected-to portions of the Report *de novo* and the remainder of the Report for clear error, this Court ADOPTS the Report in full and OVERRULES Petitioner's objections. The petition is DENIED.

## I.     BACKGROUND[2]

### A.  Factual Background

Petitioner had been in a relationship with Diamond Dunn intermittently since 2005.  (*See* Trial Tr. at 82:14–83:14.[3])  After Dunn gave birth to their daughter in 2008, she and Petitioner moved to Virginia where Petitioner's mother and sister lived.  (*Id*. at 83:7–84:18.)  After multiple domestic altercations, Dunn broke up with Petitioner and moved back to New York with their daughter.  (*Id*. at 84:24–86:7.)  The two stayed with Dunn's mother, Elvira Brown.  (*Id*. at 86:5– 7, 539:20–22.)  In 2012, Dunn contacted Petitioner, hoping to rekindle their relationship.  (*Id*. at 86:8–88:10.)  When Petitioner asked to visit Dunn, she agreed.  (*Id*. at 88:11–22.)  She and Brown

---

[1]  Petitioner represents that he received the Report on February 14, 2025, and his objection was dated February 17, 2025, within the 14-day objection period.  (Obj. at 1.)  Upon receiving a copy of the Petitioner's objections, Respondent did not contest the timeliness of these objections.

[2] The procedural and factual background is set forth in detail in the Report and incorporated by reference.  (See Report at 2–22.)

[3] "Trial Tr. __" refers to the consecutively paginated transcript of the testimonial portion of Petitioner's trial (ECF No. 27-3 to 27-4), which took place from November 9 through December 3, 2015.

hosted Petitioner from December 26, 2012, until January 3, 2013.  (*Id*. 89:6–90:4, 511:18–512:2, 513:25–514:18, 551:8–552:21.)

On the morning of January 3, 2013, Brown woke up early and left for work.  (*Id.* at 93:10–23, 454:10–13.)  While Petitioner remained in the apartment, Dunn woke up and took their daughter to school.  (*Id*. at 93:1–94:3.)  After returning home, Dunn and Petitioner had sex and fell back asleep.  (*Id*. at 142:6–23.)  When Dunn woke up, she found Petitioner awake and in an agitated state.  (*Id*. at 96:10–17; 143:6–144:10.)  After repeatedly telling Dunn to "stop playing with [him]," Petitioner pulled a gun from under the bed, pointed it at Dunn, and fired three shots.  (*Id*. at 94:13–98:8, 144:8–13, 159:3–4.)  Dunn survived the shooting.  (*Id*. at 99:7–104:4.)  As Brown returned from work, Petitioner ran from the bedroom and shot Brown.  (*Id*. at 98:19–99:14.)  Brown died as a result.  (*Id*.)  Petitioner fled from the apartment, and thereafter Dunn's neighbor, reported the shooting to the police.  (*Id*. at 13:12–15:9, 471:3–472:24, 340:4–343:19, 234:6–18.)  After a police investigation and pursuit, U.S. Marshals arrested Petitioner at a homeless shelter in Warren, Ohio.  (*Id*. at 340:11–15, 597:10–15.)

### B.  Procedural History

On January 11, 2013, Petitioner was charged with second-degree murder, attempted second-degree murder, first-degree manslaughter, and three counts of second-degree weapon possession in a felony complaint.  (RA 002.[4])  The factual portion of the complaint was "based upon official investigation, and witnesses known to the Police Department."  (*Id*.)  A grand jury then indicted Petitioner for the same charges as well as two counts of second-degree assault.  (*Id*. at 007–12.)

---

[4] "RA __" refers to the consecutively paginated Appendix for Respondent (ECF No. 26-1 to 26-3).

During juror selection for Petitioner's trial, a prospective juror stated that she and her sister were "almost robbed." (Trial Tr. at 115:13–18.) She first said that this experience would affect her ability to be fair and impartial, but, after further questioning, she said it actually would not. (*Id*. at 116:7–117:12.) She also disclosed that her son was on parole after pleading guilty and serving prison time for criminal possession of a weapon and conspiracy to commit murder. (*Id*. at 117:13–118:10.) When asked about Petitioner's choice to go to trial, the potential juror said, "I commend him for doing that." (*Id*. at 118:20–119:8.) After questioning, the court, over Petitioner's objection, granted the People's for-cause challenge.

During trial, the People called over a dozen witnesses, but did not call a witness from the Office of the Chief Medical Examiner to testify as to Brown's autopsy. (*Id*. 492:11–493:5.) On December 2, 2015, the prosecution planned to call its last witness at trial, medical examiner Monica Smiddy. (*Id*. at 492:12–13.) However, Smiddy had been severely injured the night before and would not be able to testify until the following week. (*Id.* at 492:12–18.) The prosecutor stated that another medical examiner present for the autopsy could testify later that afternoon. (*Id*. at 492:19–21).

Following this exchange, the trial court suggested that the parties stipulate to the cause of death rather than have the medical examiner testify, and enter the autopsy report into evidence. (*Id*. at 492:22–23). While Petitioner's counsel was initially unwilling to stipulate, they reconsidered and said that a stipulation sounded "appealing" after the court mentioned that "it saves those gruesome photos that you argued vociferously against them coming in." (*Id.* at 492:22–493:5). After a recess where Petitioner's counsel discussed the stipulation with his client, Petitioner's counsel explicitly confirmed that he showed the written stipulation to Petitioner who then consented to the stipulation on the condition that its language be adjusted slightly. (*Id.* at

495:6–15).  After the court and parties pared down its language on the record, the parties agreed to enter the stipulation into evidence without the medical examiner's testimony.  (*Id.* at 495:11–499:8).  The parties stipulated that the medical examiner would have testified that the cause of death was "a gunshot wound [to the] torso," and that Brown was shot at "close range," dying "within seconds of being shot."[5]  (*Id.* at 502:16–503:12.)  After the jurors entered the court room, the stipulation as to Brown's cause of death was entered into evidence as People's Exhibit 35 and read to the jury thereafter.  (*Id.* at 502:5–503:23).  The defense only called the Petitioner as a witness.  (*Id.* 511:1–635:8.)  During his testimony, he denied that he was even present when Dunn was shot.  (*Id.* at 517:24–518:25.)

After closing arguments, the jury convicted Petitioner of murdering Brown and attempting to murder Dunn.  (ECF No. 27–7, at 93:24–94:17.)  He was then sentenced for a definite term of 25 years on the attempted murder charge and an indefinite term of 25 years to life on the murder charge, to run consecutively.  (ECF No. 27–9 at 3:1-8.)

Following his conviction, Petitioner appealed to the New York Supreme Court, Appellate Division, arguing that (1) the trial court erred in granting the People's for-cause challenge; (2) the verdict was against the weight of the evidence; and (3) his sentence was excessive.  (RA 13–56.)  The Appellate Division unanimously affirmed his conviction, rejecting all of Petitioner's arguments.  (*Id.* at 107–108.)  Then, Petitioner filed his first N.Y. Crim. Proc. Law ("C.P.L.") § 440.10(1) motion to vacate his conviction.  (*Id.* at 117–126.)  He argued that the initial felony

---

[5] The stipulation read, in full: "The People and Defense hereby stipulate that if Dr. Monica Smiddy, an expert in forensic pathology with the Office of the Chief Medical Examiner of New York City, were called to testify, she would testify to the following: 1. That an autopsy was done on January 4th of 2013 of Elzina Louise Brown.  2. That the cause of death was gunshot wound of torso, with perforations of heart and lungs.  3. That the entry wound was to her left chest and exit wound was in her right back.  4. That the path of the bullet was left to right, front to back and downward.  5. That People's exhibit 34 is an autopsy photo of Elzina Louise Brown for medical examiner number B13-0047.  6. That Elzina Louise Brown died within seconds of being shot.  7. That the gun which caused the wound was fired from close range.  8. That Elzina Louise Brown had no chance to survive with the injuries that she sustained."  (Trial Tr. at 502:16–503:12.)

complaint was "jurisdictionally defective" since it "failed to establish the witnesses bases of knowledge of information and the grounds for belief." (*Id.* at 119–125.) The trial court denied the motion pursuant to C.P.L. § 440.10(2)(c), holding that Petitioner's claim arose from "facts readily attainable from the record" and "should have been raised on direct appeal." (*Id.* at 338–340.) While the motion to vacate judgment was pending, Petitioner also submitted his initial petition for a writ of habeas corpus which argued (1) that the original felony complaint was jurisdictionally defective; (2) that the trial court erroneously granted the People's for-cause challenge; and (3) that the verdict was against the weight of the evidence. (*See* Pet., ECF No. 2.) Federal review of a habeas petition requires the exhaustion of all state law remedies. Since Petitioner's C.P.L. §440.10(1) motion based on the first claim was still pending, Magistrate Judge Moses stayed the petition "until 45 days after a decision is issued in state court" on that motion. (Order, ECF. No. 12, at 2.)

In state court, Petitioner requested a writ of error *coram nobis* on the ground that his appellate attorney was ineffective for failing to raise the argument alleging that the felony complaint was jurisdictionally defective. (RA 374–383.) The Appellate Division denied the application (*id.* at 634), and the New York Court of Appeals denied leave to appeal. (*Id.* at 635.) In his most recent challenge to the conviction in state court, Petitioner filed another C.P.L. § 440.10(1) motion to vacate the judgment on a new basis: that the trial court violated his Sixth Amendment right to confront the witnesses against him by permitting the parties to stipulate to facts concerning Brown's cause of death. (*Id.* at 638–662.) Again, the state court denied the motion because the claim was procedurally barred pursuant to C.P.L. § 440.10(2)(e), and, in the alternative, the trial court denied the motion on the merits. (*Id.* at 681–684.) Because Petitioner had exhausted his state court remedies, Magistrate Judge Moses lifted the stay on the original

habeas corpus petition.  (Order, ECF No. 15.)  On a motion for leave to amend his habeas petition, Petitioner added the claim of his most recent C.P.L. § 440.10(1) motion, that the trial court violated his Sixth Amendment right to confront adverse witnesses.  (Am. Pet. at 11.)

## II.    LEGAL STANDARDS

### A.  Reports and Recommendations

This Court "'may accept, reject, or modify, in whole or in part, the findings or recommendations' set forth in a magistrate judge's report." *James v. Capra*, 19-CIV-6966 (GBD) (KNF), 2020 WL 3100210, at *2 (S.D.N.Y. June 11, 2020) (quoting 28 U.S.C. § 636(b)(1)).  If a party asserts a proper objection to a magistrate judge's report, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).  However, the court is not required "to hold a *de novo* hearing of the case." *U.S. v. Raddatz*, 447 U.S. 667, 676 (1980) (quoting H.R. Rep., at 3–4, U.S. Code Cong. & Admin. News 1976, p. 6163).  Instead, the court may "arrive at its own, independent conclusion" regarding Petitioner's objections. *Nelson v. Smith,* 618 F.Supp. 1186, 1189–90 (S.D.N.Y.1985) (quoting *Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983)).

Objections to a magistrate judge's report must be "specific," "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b); *accord* 28 U.S.C. § 636(b)(1).  "Portions of a magistrate judge's report to which no or 'merely perfunctory' objections are made are reviewed for clear error." *Rodriguez v. Uhler*, 15-CIV-9297 (GBD) (DF), 2018 WL 1633568, at *1 (S.D.N.Y. Apr. 3, 2018) (citing *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006)).  "The clear error standard also applies if a party's objections are improper—because they are conclusory, general, or simply rehash or

reiterate the original briefs to the magistrate judge." *Molemohi v. New York*, 18-CIV-9740 (GBD) (JLC), 2020 WL 1303560, at *2 (S.D.N.Y. Mar. 19, 2020) (citations omitted). Clear error arises when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow,* 462 F.3d 55, 72 (2d Cir. 2006) (quoting *United States v. Garcia*, 413 F.3d 201, 222 (2d Cir.2005)).

Since Petitioner is proceeding *pro* se, his objections are "generally accorded leniency" and should be construed "to raise the strongest arguments that they suggest." *Sloane v. Rock*, No. 09-CV-5923 (CS) (LMS), 2011 WL 2070754 (S.D.N.Y. May 19, 2011) (quoting *Milano v. Astrue*, No. 05-6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)). However, "even a *pro se* party's objections . . . must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Servs.,* No. 06-5023, 200 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (quotation omitted). *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted).

Here, Petitioner has submitted objections to the Report's conclusions as to all his claims except for his third claim, that the jury's verdict was against the weight of the evidence. (Obj.) Much of Petitioner's Objection rehashes or reiterates the arguments made in his petitions while some parts raise challenges specific to the Report. Given the more lenient standards imposed upon a *pro se* petitioner, this Court will apply a *de novo* standard to review the portions of the Report where Petitioner objected. Because Petitioner does not object to the portion of the Report concerning his third claim, the Court will review that portion for clear error.

**B. Procedural Defaults for Habeas Corpus Petitions**

**a. Exhaustion of State Court Remedies**

A state prisoner may apply for a writ of habeas corpus from a federal court "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2254(a). § 2254(b)(1)(A) requires that the petitioner "has exhausted the remedies available in the courts of the State" before a federal court will entertain his petition for federal habeas relief. A petitioner has not exhausted his state court remedies when "he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To exhaust state court remedies, the petitioner must fairly present the state courts with the "substantial equivalent" of the claim that he urges upon the federal court. *Strogov v. Att'y Gen. of N.Y.,* 191 F.3d 188, 191 (2d Cir. 1999) (quoting *Picard v. Connor,* 404 U.S. 270, 278 (1971)). If the petitioner has not properly exhausted his state court remedies, the petition is procedurally barred and must be denied by the reviewing federal court. *Picard,* 404 U.S. at 275; 28 U.S.C. § 2254(b).

**b. Independent and Adequate State Ground Doctrine**

When a state court resolves a federal claim relying on a state law ground that is both "independent of the federal question and adequate to support the judgment," federal habeas review of that claim is foreclosed. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be considered "independent of the federal question," it must be "'clear from the face of the opinion' that the court intended to rely on the state rule in disposing of the federal claim." *Robinson v. Greene*, 507 F. Supp. 2d 279 (W.D.N.Y. 2007) (quoting *Coleman*, 501 U.S. at 735). To be considered "adequate to support the judgment," the state rule must be "firmly established and regularly followed" by the state. *Ford v. Georgia*, 498 U.S. 411, 412 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348

(1984)).  Whether the rule is "firmly established and regularly followed" depends on "the specific circumstances presented in the case," and "the asserted state interest in applying the procedural rule in such circumstances."  *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

If the petitioner has previously defaulted on his federal claims in state court based on an independent and adequate state ground, the petition is procedurally barred "unless the petitioner demonstrates cause and actual prejudice," *Coleman*, 501 U.S. at 748 (citing *Engle v. Isaac*, 456 U.S. 107 (1982)), or that federal habeas review is required to correct "a fundamental miscarriage of justice." *Id.* (quoting *Engle,* 456 U.S. at 135.)  To demonstrate "cause," it must be shown that, "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986).  To demonstrate "prejudice," the petitioner must show that the alleged violations "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  Lastly, a "fundamental miscarriage of justice" only occurs where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

## C.  Review of State Court Merits Determinations

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may review federal claims decided on the merits in the last reasoned state court ruling and grant habeas relief only if the state court decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

To grant the petition under the first element of § 2254(d), the state court ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. 415, 420 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Clearly established Federal law" refers to Supreme Court precedent "as of 'the time the state court renders its decision,'" not "later decided cases." *Brown v. Davenport*, 596 U.S. 118, 136 (2022) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)). A state court decision is "contrary to" that federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000). A state court decision involves an "unreasonable application" of federal law if (1) "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407.

Under the second element of § 2254(d), the federal court affords the state trial court substantial deference in their factual determinations. *See Brumfield v. Cain*, 576 U.S. 305, 314 (2015). A federal court will not find unreasonableness "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The fact that "reasonable minds reviewing the record might disagree" on the proper factual determination is insufficient to overcome the trial court's determination. *Rice v. Collins*, 546 U.S. 333, 341–342 (2006). A federal court may find an "unreasonable determination of the facts"

where, for example, the trial court's assumptions about the record were incorrect by clear and convincing evidence, *see Wiggins v. Smith*, 539 U.S. 510, 528 (2003), or where the court ignored highly probative and material evidence, *see Miller–El v. Cockrell*, 537 U.S. 322, 346 (2003).

### III.    ALL OF PETITIONER'S CLAIMS ARE DENIED

#### A.  Petitioner's First Claim – The Complaint was Jurisdictionally Defective

Petitioner argues that the felony complaint used to commence the criminal action against him "is jurisdictionally defect[ive] because it never established reasonable cause," and therefore, the arrest warrant obtained through this defective felony complaint was also improper.  (Traverse, ECF No. 30, at 5.)  Petitioner claims that the complaint "failed to establish the witness['s] bases of knowledge" for alleging Petitioner's involvement in the charged crimes.  (Pet. at 9.)  Thus, Petitioner contends the initial accusatory instrument was insufficient "to confer jurisdiction of the criminal action" in the state court, and as a result, the arrest made based on this jurisdictionally defective accusatory instrument violated the Fourth Amendment of the Constitution.  *Id.*

#### a.  This claim is procedurally barred.

This Court is foreclosed from habeas review of this claim because the state court relied on an independent and adequate state law ground in resolving this claim.  New York State Law requires a court deny a C.P.L. § 440.10 motion when the defendant failed "to raise [that] ground or issue upon an appeal" when "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted .  .  . adequate review of th[at] ground or issue."  C.P.L. § 440.10(2)(c).  In Petitioner's first C.P.L. § 440.10 motion, he presented the same jurisdictional defect claim to the state trial court, and it is "clear from the face of the opinion" that the state court relied upon C.P.L. § 440.10(2)(c) in denying his motion as procedurally barred.  *Robinson*, 507 F. Supp. 2d at 286.  The state court held that "C.P.L. § 440.10(2)(c) is applicable to the alleged

jurisdictional defect posited by the defendant.  As defendant's claims directly reference the arrest warrant and felony complaint, which both implicate facts readily attainable from the record, both of his claims are barred."  (RA 340.)  The state court barred the instant claim since Petitioner failed to raise it on direct appeal pursuant to C.P.L. § 440.10(2)(c).

This procedural bar is "adequate to support the judgment" because it is "firmly established and regularly followed" in New York.  *Ford*, 498 U.S. at 412; *See Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that the state court's application of  C.P.L. § 440.10(2)(c) constituted an adequate state procedural bar to Clark's federal habeas petition); *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989) (failure to raise claims on appeal constituted a procedural default that precluded federal habeas review).

The state's interest in applying this procedural rule is apparent in seeking "to prevent CPL 440.10 from being employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal."  *People v. Cooks*, 67 N.Y.2d 100, 103 (1986).  Otherwise, habeas petitioners would be able to "constantly relitigate his claims."  *Arce*, 889 F.2d at 1273.  So, the state court's express reliance on C.P.L. § 440.10(2)(c) in denying Petitioner's C.P.L. § 440.10 motion to vacate the judgment constitutes an independent and adequate state law ground which precludes federal habeas relief.

### b.  This claim of Fourth Amendment violation is meritless.

Even if the claim was not procedurally barred, Petitioner's claim that the arrest warrant was improperly issued due to the allegedly defective felony complaint is also meritless.  Petitioner argues that the issuance of the warrant constitutes a Fourth Amendment violation.  (Obj. at 1–3.) The Fourth Amendment protects against unreasonable searches and seizures which includes arrests.  *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 364 (2017).  But, there is no Fourth

Amendment violation if there was probable cause for the arrest. *See Martinetti v. Town of New Hartford Police Dep't*, 112 F.Supp.2d 251, 252 (N.D.N.Y.2000) (citation omitted). Petitioner argues that the police department did not establish probable cause because their complaint does not set forth the details of their investigation or witness accounts. (Pet. at 11.) However, because Dunn immediately identified Petitioner as the shooter to her neighbor, there was probable cause to arrest. (Trial Tr. at 64, 96–98.)

In general, "probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir.2007) (internal citations omitted)). The Supreme Court has held "that identification of the suspect by a reliable informant may constitute probable cause for arrest where the information given is sufficiently accurate to lead the officers directly to the suspect." *Wong Sun v. U.S.*, 371 U.S. 471, 480 (1963) (citing *Draper v. United States*, 358 U.S. 307 (1959)). Dunn's identification of Petitioner as the shooter constitutes sufficient probable cause for Petitioner's arrest. Hence, Petitioner's claims regarding his arrest warrant are meritless, do not indicate any substantial disadvantage at trial, and do not support a finding of prejudice as a result.

### c. Petitioner's Objection based upon ineffective assistance of counsel

In his objection, Petitioner argues for ineffective assistance of counsel, but did not object to the applicability of C.P.L. § 440.10(2)(c) as an independent and adequate state ground of the state court's decision. (Obj. at 1–3.) Petitioner contends that his counsel's failure to argue jurisdictional defect on appeal constitutes cause for his procedural default. (*Id*. at 2.)

Petitioner's claim of ineffective counsel is insufficient to demonstrate cause for the procedural default. The U.S. Supreme Court held in *Strickland v. Washington* that a counsel's assistance is constitutionally ineffective when (1) "counsel's performance was deficient", and (2) "the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." 466 U.S. 668, 687 (1984). To demonstrate deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

Here, counsel's assistance was not ineffective because Petitioner's jurisdictional defect claim was meritless. Any jurisdictional defect in a felony complaint was remedied by a superseding grand jury indictment on the same charges. C.P.L. §§ 100.05, 100.10, subd. 5, 180.10, 190.65, subd. 1; *See Brown v. Perlman*, No. 03cv2670 (RJH), 2006 WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006) ("Petitioner's claim regarding his arrest and pre-indictment proceedings is meritless because the grand jury indictment superceded any prior accusatory actions, rendering any alleged pre-indictment deficiencies irrelevant"); *People v. Black*, 705 N.Y.S.2d 696, 698 (3d Dep't 2000) (holding that a grand jury may make an independent determination as to whether there is reasonable cause for the charges even if there are defects in the felony complaint, and a valid indictment by the grand jury supersedes the felony complaint); *McKelvey v. Bradt*, No. 13CV3527 (CM) (DF), 2016 WL 3681457 (S.D.N.Y. July 6, 2016) (finding that the court obtains jurisdiction upon the filing of the indictment even with a defective felony complaint.) Upon Petitioner's request that his counsel raise this issue on appeal, counsel refused to do so for that very reason. (Traverse, Ex. 1 ("While I do believe that your premise that the faulty complaint could lead to a lack of jurisdiction, I also believe that once the grand jury has issued an indictment all of this becomes irrelevant") (citing *People v. Aaron*, 55 A.D.2d 653).) Accordingly, Petitioner's counsel's refusal to raise a meritless argument does not fall below an objective standard of

reasonableness. *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quoting *Jameson v. Coughlin*, 22 F.3d 427, 429–30 (2d Cir.1994)) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled.") Therefore, Petitioner's counsel was not ineffective in choosing to forego this claim, and Petitioner failed to establish cause for the procedural default.

Moreover, Petitioner's counsel's failure to raise the meritless jurisdictional defect claim did not create "actual prejudice" to Petitioner. *Coleman*, 501 U.S. at 748. First, there was no "actual and substantial disadvantage" resulting from the allegedly defective complaint because the grand jury indictment would have remedied any alleged jurisdictional defect of the felony complaint. *Frady*, 456 U.S. 152 at 153. To acquire trial jurisdiction, New York requires that the felony complaint "be followed by . . . an indictment based upon legally sufficient grand jury evidence." *People v. Alejandro*, 70 N.Y.2d 133 (1987). In fact, the felony complaint did not serve as the "basis for prosecution" in the first place. C.P.L § 1.20(8). After his arrest, Petitioner was indicted in the New York Supreme Court by a grand jury, properly imbuing the state court with jurisdiction regardless of any defect in the felony complaint. (RA 7–12.) As such, even assuming that the felony complaint was defective, it did not serve as the basis for Petitioner's prosecution and cannot support a finding of prejudice.

Additionally, Petitioner's objections do not demonstrate "a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (internal quotation marks omitted). Petitioner has not provided any "new reliable evidence that was not presented at trial" to demonstrate that the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298 (1995). Any alleged defect in the felony complaint or arrest warrant did not preclude

16

Petitioner from introducing exculpatory evidence to show his actual innocence here.  Petitioner fails to demonstrate a fundamental miscarriage of justice.

In conclusion, Petitioner's jurisdictional defect claim is procedurally barred from federal habeas review, and AEDPA review of the state court's holdings on the merits are unnecessary since the state court decided the motion purely on procedural grounds.

**B. Petitioner's Second Claim – The Juror Discharge was Improper**

On Petitioner's second ground for relief, he argues that the trial court erred in granting the People's for-cause challenge of a prospective juror ("the Juror"), since she "unequivocally stated that she would be fair and impartial."  (Obj. at 4.)  Petitioner claims that the People made the challenge "without proof that she was bias[ed]," and that they had wrongfully "attribut[ed] . . . [to her] statements by an unidentified person."  *Id*.  Petitioner also argues that an "unidentified person" who made the statement "I can't be fair" during *voir dire* may have been placed on the jury instead, making the jury partial.  *Id.*  Thus, Petitioner claims that the for-cause challenge and the resulting failure to strike the unidentified person "violated [his] Sixth Amendment Right to trial by an impartial jury."  *Id.* at 5 (cleaned up.)

The right to a jury trial under the Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors."  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (internal citation and quotation marks omitted).  To ensure this guarantee, the court must provide an "an adequate *voir dire* to identify unqualified jurors."  *Morgan v. Illinois*, 504 U.S. 719 (1992). "The defense must be given a full and fair opportunity to expose bias or prejudice on the part of the veniremen."  *United States v. Barnes,* 604 F.2d 121 (2d Cir. 1979) (internal citation omitted). Federal law affords trial courts broad discretion to "intervene to ensure that the jury" comes to a fair and impartial verdict, and the only limitation to that discretion is "the requirement that there

be no prejudice to the defendant through a biased jury." *Khan v. Capra*, 2021 WL 2270060 (S.D.N.Y. Apr. 26, 2021), *report and recommendation adopted in part, rejected in part*, 2021 WL 2135279 (S.D.N.Y. May 26, 2021) (quoting *Rosado v. Unger*, No. 11 Civ. 3747 (KBF)(THK), 2012 WL 5871607, at *2 (E.D.N.Y. Dec. 6, 2010)).

To successfully establish a constitutional violation and cognizable habeas claim, Petitioner must demonstrate that "the jury actually chosen was biased." *Barnes,* 604 F.2d at 138; *see e.g., Ross v. Oklahoma*, 487 U.S. 81 (1988) (failure to remove an unqualified juror for cause did not abridge the petitioner's right to an impartial jury since the juror was removed by peremptory challenge and did not sit on the jury); *United States v. Perez*, 387 F.3d 201, 208 (2d Cir.2004) (defendant cannot succeed on a constitutional challenge based on an error during jury selection because he does not dispute that the jury that ultimately convicted him was fair and impartial). "A trial judge's discretion will be upheld unless a defendant has been precluded from obtaining an impartial jury." *Barnes,* 604 F.2d at 138. "Juror discharge and *voir dire* proceedings are governed by state law." *McCrary v. Artuz*, No. CV 95-622, 1995 WL 728423, at *3 (E.D.N.Y. Nov. 28, 1995) (citing C.P.L. § 270.35, 270.15(3)). Violations of state law are not subject to federal habeas review unless such violations implicate constitutional concerns. 28 U.S.C. § 2254(a).

### a. The claim regarding the Juror's dismissal does not present a federal question.

First, Petitioner's claim that the trial court erred by removing the Juror for cause fails since the claim does not present a federal question cognizable under federal habeas review. Her dismissal did not violate any state law, nor implicate any constitutional concerns. New York state law provides that "[i]f there is any doubt about a prospective juror's impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have 'replaced one impartial juror

with another.'" *People v. Arnold*, 96 N.Y.2d 358 (2001) (quoting *People v. Culhane*, 33 N.Y.2d 90 (1973)).  The decision of the New York Supreme Court, Appellate Division on this claim held that "the court providently exercised its discretion in excusing the panelist for cause, because her answers cast 'serious doubt on [her] ability to render an impartial verdict,'" (RA 108 (quoting *Arnold*, 96 N.Y.2d at 363)).  To the New York Supreme Court, it was appropriate to dismiss the claim based on state law standards for juror discharge.  It is not the place of a federal habeas court to "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Therefore, the Court denies the claim regarding dismissal of the Juror.

**b.  The claim regarding the unidentified prospective juror is meritless.**

To demonstrate a constitutional violation, Petitioner claims that an unidentified prospective juror who stated "I can't be fair" might have been selected into the jury in violation of his Sixth Amendment rights.  (Obj. at 4–5.)  Respondents argue that this unidentified juror was "without a doubt" the Juror that was stricken.  (Memorandum of Law in Opposition ("Opp. Brief"), ECF No. 26, at 36).  Petitioner disagrees.  (Obj. at 4.)

At trial, the People asked prospective jurors whether Petitioner reminded them of a friend or family member, a single unnamed juror stated, "I can't be fair."  (Trial Tr. at 179.)  Sometime after that, the People challenged the Juror for cause, stating that, "[s]he said during questioning my *voir dire*, she cannot be fair and impartial." (*Id.* at 193.)  In response, defense counsel argued that "there was further inquiry . . . by the Court," where "she said she can be fair." *Id.*  However, the trial judge had only addressed the Juror prior to the prosecutor's questioning.  In fact, the trial judge responded to defense counsel's objection by saying, "Initially when I questioned her there was some confusion with language I had used, but when you [the prosecutor] asked her, she said she could not be fair and impartial." (*Id.* at 194.)  On direct appeal, the New York Appellate

Division found that, "[t]he *voir dire* record, viewed as a whole, supports the inference that it was [the Juror] who made these statements." RA 107.

To overturn this factual finding, Petitioner must demonstrate that the finding by the state court represents an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). Our review under this standard is "highly deferential" to the state court. *Hardy v. Cross*, —— U.S. ——, 132 S.Ct. 490, 491 (2011) (per curiam) (quotation omitted). The factual determination of the New York Appellate Division "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*, 558 U.S. at 301. The finding may be "unreasonable" where "reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding or where the court ignored highly probative and material evidence." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (internal citations omitted).

Because only one juror stated that they could not be fair and the trial judge granted dismissal of the Juror based on that statement, the Appellate Division reasonably inferred that the Juror was the unnamed juror. There is no indication that the Appellate Division "misapprehended or misstated" these aspects of the record. *Cardoza*, 731 F.3d at 178 (citing *Wiggins*, 539 U.S. 510, 528). Petitioner did not point to any additional material evidence in the record to challenge the Appellate Division's finding. Hence, the Appellate Division did not make an "unreasonable determination of the facts in light of the evidence" when they found that the Juror was the unidentified juror who made the statement in question. 28 U.S.C. § 2254(d).

Furthermore, Petitioner does not satisfy his "ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Cardoza*, 731 F.3d at 178 (quoting *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir.2012)). Petitioner argues that, if the

unnamed juror was not properly identified, then that prospective juror could have been on the jury which convicted him, violating his Sixth Amendment right to trial by an impartial jury. (Obj. at 4.) However, this does not rise to an injury of constitutional magnitude since Petitioner and his counsel were afforded ample opportunity to question the unnamed juror during their own *voir dire* or bring their own for cause challenge against the unnamed juror. "Part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). Where a defendant is provided significant opportunity to identify, question, and challenge unqualified jurors, their Sixth Amendment interests in an impartial jury are protected, especially where a prospective juror disclosed their bias explicitly during jury selection. *See Tanner v. United States*, 483 U.S. 107, 107 (1987) (the petitioners' Sixth Amendment rights were not violated due to alleged juror misconduct since the petitioners were provided with ample opportunity during hearings to produce evidence of such misconduct); *United States v. Nieves*, 58 F.4th 623 (2d Cir. 2023) (after sufficient juror questioning, *voir dire* cannot be challenged as inadequate if defense counsel failed to object to or make challenges to prospective jurors when they had the opportunity to do so). Petitioner's counsel did not question the juror who made the statement and did not refer to the statement during the constitutionally sufficient *voir dire* provided. Also, Petitioner's counsel did not bring a for-cause challenge against any prospective juror, suggesting that the prospective juror at issue was actually the Juror who was already challenged by the prosecutor and dismissed.

Ultimately, Petitioner's second claim fails because it is not cognizable on federal habeas review, it does not demonstrate an unreasonable determination of the facts by the trial court or Appellate Division, and Petitioner does not demonstrate a constitutional violation.

### C.  Petitioner's Third Claim – The Verdict was Against the Weight of the Evidence

Since Petitioner did not object to Magistrate Judge Moses's Report on this claim, this Court will review this portion of the Report for clear error.  Petitioner argues that the jury's guilty verdict was "against the weight of the credible evidence given [his] testimony adamantly deny[ing] [his] involvement in the shootings."  (Am. Pet. at 8.)  The Report correctly held that a weight-of-the-evidence argument is a claim under state law not cognizable on federal habeas review.  *McKinnon v. Superintendent*, 422 Fed. App'x 69, 75 (2d Cir. 2011); *see also Douglas v. Portuondo*, 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002).  The claim arises under New York state law C.P.L. § 470.15(5) which allows courts "to make weight of the evidence determinations," rather than under the Constitution.  *See Cintron v. Fisher*, No. 07-CV-1058 (KMK) (PED), 2012 WL 213766 (S.D.N.Y. 2012).  For a claim asserting "an error of state law, . . . habeas review is not available."  *Douglas*, 232 F.Supp.2d at 116.  A federal habeas court may not "reexamine state-court determinations on state-law questions."  *McGuire*, 502 U.S. at 67-68.  Therefore, Magistrate Judge Moses properly determined that this Court does not have power to review the state court determination rejecting this claim.[6]  (Report at 25.)  Accordingly, the Court denies Petitioner's weight-of-evidence claim.

### D.  Petitioner's Fourth Claim – The Stipulation Violated Petitioner's Right to Confront Adverse Witnesses

On Petitioner's fourth ground for relief, he argues that his Sixth Amendment right to confront adverse witnesses was violated when the trial court allowed Brown's cause of death to be

---

[6] The Report properly states that a weight-of-the-evidence argument does not raise constitutional due process concerns unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Policano v. Herbert*, 507 F.3d 111 (2d Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324).  Even if Petitioner had brought a cognizable sufficiency-of-the-evidence claim under the Due Process Clause of the Constitution, the claim would fail on the merits. (Report at 25.)

stipulated without the testimony of a medical examiner.  (Am. Pet. at 10.)  In his petitions and objections, he argues that *Garlick v. Lee*, 1 F.4th 122 (2d Cir. 2021), a case decided by the Second Circuit Court of Appeals after his conviction, held that an autopsy report could not be stipulated into evidence without an opportunity to confront a medical examiner present for the autopsy.  (Obj. at 5.)  Since he could not have foreseen this decision at the time of his appeal, he asserts that there was sufficient cause for his failure to raise this argument on direct appeal, and the procedural bar should not apply as a result.  (*Id.*)  Petitioner also argues that his trial counsel erred in stipulating to the cause of death without submission of the autopsy report into evidence.  (Traverse at 8.)

### a.   The claims regarding the stipulations are procedurally barred.

First, Petitioner's claim on this issue is barred because Petitioner has previously defaulted on this claim in state court based on an independent and adequate state ground.  *Coleman*, 501 U.S. at 729.  Petitioner had already moved to vacate the judgment under C.P.L. § 440.10(1) based on this claim, but the state court found that the motion was procedurally barred based on C.P.L. § 440.10(2)(c).  (RA 681–684.)  The state court concluded that the claim was "entirely record based" as the stipulation was discussed, entered into evidence, and read to the jury on the record, and Petitioner failed to raise the issue on direct appeal.  (RA 683.)  Hence, the state court relied on the C.P.L. § 440.10(2)(c) in disposing this claim, making it "independent of the federal question." *Coleman*, 50 U.S. at 729.  C.P.L. § 440.10(2)(c) is also "adequate to support the judgment" since New York state courts commonly rely on it in when considering C.P.L. § 440.10 motions such as the Petitioner's.  *Ford*, 498 U.S. at 412.

Petitioner did not sufficiently demonstrate cause, prejudice, or a fundamental miscarriage of justice necessary to overcome the independent and adequate state ground.  In his submissions to this Court, Petitioner presents two possible causes for his failure to comply with C.P.L. §

440.10(2)(c).  In his Amended Petition, he argues that the claim was not raised on direct appeal because "[his] appellate attorney was ineffective."  (Am. Pet. at 11.)  In his Objection, he reasserts that the claim was not raised on direct appeal because it is based on the Second Circuit's decision in *Garlick v. Lee* which was published after his conviction, and there was "no way [he] could have anticipated the clarification in law."  (Obj. at 5.)

As stated before, attorney error only constitutes cause if it "constitutes ineffective assistance of counsel violative of the Sixth Amendment."  *Coleman*, 50 U.S. at 725.  Here, Petitioner's appellate counsel did not err in failing to raise the claim because it is meritless.  A refusal to raise a meritless claim does not constitute ineffective counsel violative of the Sixth Amendment.  *Aparicio*, 269 F.3d at 99.  The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause does not prohibit parties from stipulating to the content of testimonial evidence without an opportunity to confront, especially considering that a strategically worded stipulation may be advantageous to the defendant.  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 328 (2009).  Here, both defense counsel and Petitioner negotiated and explicitly consented to the factual stipulation, and neither of them objected to its entrance into evidence.  (Trial Tr. at 495:6–15.)  In fact, defense counsel acknowledged the strategic advantages of the stipulation as it would avoid the entrance of the "gruesome" autopsy photos into evidence upon the medical examiner's testimony.  (*Id.* at 492:22–493:5.)  Hence, Petitioner did not demonstrate any ineffective assistance of counsel and cannot establish cause for the failure to raise this claim upon direct appeal.

Petitioner has also failed to demonstrate prejudice as a result of the stipulation. The stipulation did not work to "his *actual* and substantial disadvantage" since, as previously discussed,

it may have actually benefitted Petitioner by preventing the admission of "gruesome" autopsy photos into evidence. *Frady*, 456 U.S. at 170. Even so, the stipulation did not work an "error of constitutional dimensions" required to demonstrate prejudice since it did not constitute a violation of the Confrontation Clause or any other constitutional provision. *Id.* Similarly, the stipulation has not caused a "fundamental miscarriage of justice" since there was neither (1) "a constitutional violation," nor (2) evidence suggesting that it led to the "conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Therefore, Petitioner's last claim also fails since it is both procedurally barred and meritless.

### b.  Petitioner's Reliance on *Garlick*

Petitioner's argument based on the Second Circuit ruling in *Garlick* does not support his claim and *Garlick* does not constitute a cause for his procedural default. *Garlick* provides that, "the admission of the autopsy report at . . . trial through a surrogate witness" over Garlick's objection violated the Confrontation Clause. 1 F.4th at 136. Here however, at Petitioner's trial, there was no surrogate witness (i.e., a medical examiner not present for the autopsy), the autopsy report was not admitted into evidence, and he did not object to the stipulation. (Trial Tr. at 492:9–503:23.) Following *Garlick*, parties may still properly stipulate to testimonial material without a live witness. In fact, the Second Circuit acknowledged and approved of stipulations within the context of the Confrontation Clause in *Melendez-Diaz* where the court stated that "[d]efense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case." *Melendez-Diaz*, 557 U.S. at 310 (noting that stipulations were central to the efficient administration of trials and the adversary process in light of the burdensome requirements of the Confrontation Clause). Hence, Petitioner's reliance on *Garlick* is misplaced, and this case does not constitute cause for his procedural default.

## IV.    CONCLUSION

Petitioner does not assert an adequate ground to set aside his conviction and sentence pursuant to § 2254.  Magistrate Judge Moses's Report and Recommendation is ADOPTED in full. Petitioner's objections to the Report and Recommendation are OVERRULED.  The petition for a writ of *habeas corpus* is DENIED.

The Clerk of Court is directed to close this case.

Dated:  New York, New York

July 28, 2025

SO ORDERED.

GEORGE B. DANIELS
United States District Judge